2007 ND 169

**Doralee RODENBIKER, Claimant and Appellant**

v.

**WORKFORCE SAFETY AND INSURANCE, Appellee**

and

**Stage Stop Liquors, Inc., Respondent.**

No. 20070114.

Supreme Court of North Dakota.

Oct. 29, 2007.

Steven L. Latham, Larson, Latham, and Huettl, LLP, Bismarck, N.D. for claimant and appellant.

Jacqueline Sue Anderson, Special Assistant Attorney General, Fargo, N.D., for appellee.

MARING, Justice.

[¶ 1] Doralee Rodenbiker appeals from a district court judgment affirming a final order of Workforce Safety and Insurance ("WSI"). The final order reduced Rodenbiker's WSI benefits from temporary total disability benefits to partial disability benefits. Rodenbiker cannot be returned to substantial gainful employment as defined under N.D.C.C. § 65–05.1–01(3), and she does not have a retained earnings capacity to meet the income test of N.D.C.C. § 65–05.1–01(6)(a)(3). We reverse the district court judgment affirming the order of WSI and remand for reinstatement of Rodenbiker's temporary total disability benefits.

I

[¶ 2] In March 2000, Doralee Rodenbiker injured her lower back when she was moving tables while employed as a cocktail waitress at Stage Stop Liquors, Inc., in Mandan. Rodenbiker submitted a claim for WSI benefits.[1] WSI accepted her claim and awarded her temporary total disability benefits.

[¶ 3] On April 25, 2005, WSI issued an order terminating Rodenbiker's temporary total disability benefits and awarding her partial disability benefits. WSI found Rodenbiker's first appropriate rehabilitation option was to return to an occupation in the statewide job pool. The order stated that Rodenbiker's medical limitations restricted her to sedentary work four hours per day, twenty hours per week, based on 2002 and 2003 functional capacity assessments ("FCA"). The April 25 order said Rodenbiker would be able to pursue employment as a telemarketer, customer service representative, or receptionist.

[¶ 4] A few months later, on August 24, 2005, WSI issued an amended order awarding partial disability benefits. The amended order was different from the original order in one respect. In the amended order, WSI concluded as a matter of law that none of the statutorily listed rehabilitation options would return Rodenbiker to substantial gainful employment. The August amended order was the subject of an administrative hearing conducted on November 7, 2005. The administrative law judge ("ALJ") recommended findings of fact, conclusions of law, and an order on May 3, 2006. On May 18, 2006, WSI adopted the ALJ's recommended decision as its final order. Rodenbiker appealed WSI's final order to the district court.

[¶ 5] On January 25, 2007, the district court affirmed WSI's May 18, 2006, final order. The district court concluded that the ALJ reasonably determined Rodenbiker was entitled only to partial disability benefits. Rodenbiker appeals.

[¶ 6] The record reveals Rodenbiker initially sought treatment from a chiropractor, who referred her to Dr. Michael Martire. Dr. Martire became her primary treating physician in the years that followed. Rodenbiker was referred to a surgeon after a disk protrusion was detected in May 2000. Rodenbiker underwent back surgery in August 2000.

---

1. At the time Rodenbiker applied for benefits, WSI was known as the "North Dakota Workers Compensation Bureau." The agency's name was changed in 2003. *See* 2003 N.D. Sess. Laws ch. 561, § 3.

[¶ 7] WSI initiated vocational rehabilitation services in December 2000. These services were discontinued the following August. Rodenbiker continued to experience significant pain and was referred for further exploration of surgical options. Rodenbiker underwent a second back surgery in February 2002. Following surgery, Dr. Martire prescribed physical therapy. Rodenbiker began an independent exercise program in July 2002. She also began psychotherapy in 2002. The treatment for her work-related injury has involved various pain medications and antidepressants.

[¶ 8] In late August 2002, a FCA found Rodenbiker capable of working at a less-than-sedentary to sedentary job for twenty hours a week, four hours per day. The FCA placed various limitations on Rodenbiker. She was to avoid forward-bending and had a low tolerance for sitting and standing. She could only occasionally lift objects, carry objects, or rotate while sitting.

[¶ 9] In February 2003, a vocational rehabilitation consultant recommended a skills upgrading program for Rodenbiker to enhance her customer service and computer skills. The record shows Rodenbiker, who previously attended a two-year legal secretary/word processing program at Bismarck State College, participated in a skills upgrading program. Dr. Martire approved her participation in the program. Rodenbiker was to attend the program two hours per day, three days per week. The ALJ noted that Rodenbiker missed several sessions for various reasons, but eventually completed the program. The record reveals Rodenbiker underwent a mini-FCA following the skills upgrading program. The assessment recommended Rodenbiker perform volunteer work as a work conditioning tool. Rodenbiker volunteered several times at a senior citizens' center as a bingo caller and receptionist.

[¶ 10] On January 21, 2004, Dr. Robert Cooper of Medical Evaluations, Inc., evaluated Rodenbiker to address work release issues and whether there was a need for an additional FCA. Dr. Cooper reported that Rodenbiker remained at the level indicated in her August 2002 FCA. He opined there were no absolute medical contraindications to Rodenbiker's ability to return to work. However, Dr. Cooper noted that Rodenbiker's pain medications might need to be altered, and Rodenbiker could struggle with psycho-social interaction required by the work recommended by WSI.

[¶ 11] Following Dr. Cooper's evaluation of Rodenbiker, Dr. Martire wrote to WSI. Dr. Martire agreed with Dr. Cooper in many respects, but questioned whether Rodenbiker would be capable of fulfilling the identified job goals because of her low sitting tolerance and emotional frailty. Dr. Martire was unsure whether different medications would help Rodenbiker participate in gainful employment. WSI scheduled a psychological evaluation for Rodenbiker with Dr. Harjinder Virdee. In Dr. Virdee's opinion, Rodenbiker's psychological condition did not prevent her from following the 2002 FCA recommendations regarding her return to work.

[¶ 12] In June 2004, Rodenbiker moved to Rock Lake to care for her mother, who has Alzheimer's disease. During the administrative hearing, Rodenbiker testified that her family paid her $300 per month to perform light housework, ensure her mother took her medications, and watch out for her mother's physical safety.

[¶ 13] In January 2005, a vocational rehabilitation consultant, Joyce Clock Olson, prepared an earnings capacity report and found Rodenbiker capable of part-time work. The report identified telemarket-

ing, customer service, and receptionist work as jobs that would not be too physically demanding for Rodenbiker. Olson based her opinion regarding the physical demand of the job goals on descriptions in the Dictionary of Occupational Titles and modifications she learned from employer contacts and site visits. Olson reported that employers would be willing to allow employees to alternate between sitting and standing while working and employees could walk within their cubicles and around the office premises during breaks. The report concluded that Rodenbiker had a retained earnings capacity of $163 per week.

## II

[¶14] This Court reviews an agency order in the same manner as the district court. N.D.C.C. § 28–32–49. When a district court reviews an administrative agency's order, the district court must affirm the order of the agency unless the district court finds that any of the following are present:

1. The order is not in accordance with the law.

. . . .

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

N.D.C.C. § 28–32–46. In its review of an agency order, this Court does not make independent findings of fact or substitute its judgment for that of the administrative agency. *Aga v. Workforce Safety & Ins.,* 2006 ND 254, ¶12, 725 N.W.2d 204. This Court determines only "whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record." *Id.*

[¶15] Application and interpretation of a statute is a question of law. *Rojas v. Workforce Safety & Ins.,* 2006 ND 221, ¶13, 723 N.W.2d 403. Questions of law are fully reviewable on appeal from an administrative order. *Forbes v. Workforce Safety & Ins.,* 2006 ND 208, ¶10, 722 N.W.2d 536.

## III

[¶16] Two statutes are central to this case: N.D.C.C. § 65–05.1–01 and N.D.C.C. § 65–05–10. The parties mistakenly agreed that the 2003 version of the statutes was the appropriate version to apply to Rodenbiker's claim. However, the applicable statutes are those effective on March 2000, the date Rodenbiker suffered her work-related injury. Unless otherwise provided, statutes in effect on the date of an injury govern WSI benefits. *See Robertson v. N.D. Workers Comp. Bureau,* 2000 ND 167, ¶21, 616 N.W.2d 844; N.D.C.C. § 1–02–10 (stating no part of code is retroactive unless expressly declared). Thus, the 1999 versions of N.D.C.C. § 65–05.1–01 and N.D.C.C. § 65–05–10 apply to this case. Although those statutory provisions were amended between 1999 and 2003, the amendments did not relate to eligibility for partial disability benefits and do not affect the outcome of this case. *See* 2003 N.D. Sess. Laws ch. 561, § 3 (changing the name of the agency from "workers compensation bureau" to "workforce safety and insurance"); 2003 N.D. Sess. Laws ch. 562, § 6 (amending N.D.C.C. § 65–05–10 regarding the maximum amount of partial disability benefits payable to injured workers receiving partial disability benefits).

[¶17] Section 65–05.1–01(3), N.D.C.C. (1999), provides that the goal of vocational rehabilitation is "to return the disabled employee to substantial gainful employment with a minimum of retraining, as soon as possible after an injury occurs." "Substantial gainful employment," is:

[B]ona fide work, for remuneration, which is reasonably attainable in light of the individual's injury, functional capacities, education, previous occupation, experience, and transferable skills, and which offers an opportunity to restore the employee as soon as practical and as nearly as possible to ninety percent of the employee's average weekly earnings at the time of injury, or to sixty-six and two-thirds percent of the average weekly wage in this state on the date the rehabilitation consultant's report is issued under section 65–05.1–02.1, whichever is less.

*Id.* "The purpose of defining substantial gainful employment in terms of earnings is to determine the first appropriate priority option" in a hierarchy of statutory options that would return the employee to substantial gainful employment. *Id.* In descending order, the hierarchy of options are:

a. Return to the same position.

b. Return to the same occupation, any employer.

c. Return to a modified position.

d. Return to a modified or alternative occupation, any employer.

e. Return to an occupation within the local job pool of the locale in which the claimant was living at the date of injury or of the employee's current address which is suited to the employee's education, experience, and marketable skills.

f. Return to an occupation in the statewide job pool which is suited to the employee's education, experience, and marketable skills.

g. On-the-job training.

h. Short-term retraining of fifty-two weeks or less.

i. Long-term retraining of one hundred four weeks or less.

j. Self-employment.

N.D.C.C. § 65–05.1–01(4) (1999). When none of these priority options are "viable, and will not return the employee to the lesser of sixty-six and two-thirds percent of the average weekly wage, or ninety percent of the employee's preinjury earnings," then an employee "shall continue to minimize the loss of earnings capacity," and to seek and retain employment:

1. That meets the employee's functional capacities;

2. For which the employee meets the qualifications to compete; and

3. That will reasonably result in retained earnings capacity equivalent to the lesser of ninety percent of the employee's preinjury earnings or the state's current hourly minimum wage on the date the rehabilitation consultant's report is issued.

N.D.C.C. § 65–05.1–01(6)(a). When an employee is reasonably expected to return to full-time employment, but is initially released to part-time employment, the income test of N.D.C.C. § 65–05.1–01(6)(a)(3) must be waived. *Id.*

█ [¶ 18] Total disability exists when a worker is "unable, solely because of his job-related injury, to perform or obtain any substantial amount of labor in his particular line of work, or in any other for which he would be fitted." *Jimison v. N.D. Workmen's Comp. Bureau,* 331 N.W.2d 822, 827 (N.D.1983). This Court has said that partial disability "contemplates at least three factors: First, there should be a physical disability; second, the disability should be partial, or in other words, the employee should be able to work subject to the disability; and third, there should be an actual loss of earning capacity that is causally related to the disability." *Risch v. N.D. Workers Comp. Bureau,* 447 N.W.2d 308, 309 (N.D.1989) (citation omitted).

[¶ 19] Partial disability benefits are provided to injured workers whose injuries

cause temporary partial disability resulting in decrease of earning capacity. N.D.C.C. § 65–05–10 (1999). WSI is to award partial disability benefits under N.D.C.C. § 65–05–10 based on retained earnings capacity calculated under N.D.C.C. § 65–05.1–01(6). N.D.C.C. § 65–05.1–01 (1999). An "employee's earnings capacity may be established by expert vocational evidence of a capacity to earn in the statewide job pool where the worker lives." N.D.C.C. § 65–05–10(3). "Actual postinjury earnings are presumptive evidence of earnings capacity where the job employs the employee to full work capacity in terms of hours worked per week, and where the job is in a field related to the employee's transferable skills." *Id.*

## IV

[¶ 20] Rodenbiker argues that because none of the options in the rehabilitation hierarchy under N.D.C.C. § 65–05.1–01 are viable, she, as an injured worker, only has to retain employment if such employment (1) meets her functional capacities, (2) is a job for which she is qualified, and (3) will reasonably result in retained earnings capacity equivalent to the lesser of ninety percent of her preinjury earnings or the state's current hourly minimum wage on the date the rehabilitation consultant's report was issued. Rodenbiker does not have a retained earnings capacity to meet the retained earnings goals of the 1999 statute. Thus, she argues that N.D.C.C. § 65–05–10 does not allow WSI to revoke her temporary total disability benefits and award partial disability benefits. Rodenbiker argues the 1999 version of N.D.C.C. § 65–05–10 does not provide for an award of partial disability benefits if the retained earnings capacity goals are not met and an injured worker is not able to be returned to substantial gainful employment.

[¶ 21] Rodenbiker asserts that meeting the income test of N.D.C.C. § 65–05.1–01(6)(a)(3) is a prerequisite to applying N.D.C.C. § 65–05–10. The 1999 version of N.D.C.C. § 65–05.1–01(6) provides that the income test of that section is to be applied for the determination of whether partial disability benefits are to be awarded under N.D.C.C. § 65–05–10. Section 65–05.1–01(6)(a)(3) provides that this income test must be waived if there is a reasonable expectation the employee will return to full-time employment. Rodenbiker asserts this income test was not waived because WSI did not find that Rodenbiker is reasonably expected to return to full-time employment.

[¶ 22] WSI asserts Rodenbiker is not entitled to total disability benefits because she is capable of performing some employment-related activities. WSI contends it would be illogical to assume Rodenbiker is to receive total disability benefits when she does not have a complete loss of earning capacity.

[¶ 23] WSI argues the income test of N.D.C.C. § 65–05.1–01(6)(a)(3) does not have to be met before N.D.C.C. § 65–05–10 can be applied to Rodenbiker. WSI asserts that the expert vocational evidence of Rodenbiker's capacity to earn and Rodenbiker's actual earnings related to caring for her mother provide a basis for reducing Rodenbiker's benefits to an award of partial disability benefits under N.D.C.C. § 65–05–10. WSI further contends that an injured worker is not entitled to total disability under the 1999 statute in every situation in which WSI cannot identify any positions that meet the definition of "substantial gainful employment" under the rehabilitation hierarchy of N.D.C.C. § 65–05.1–01(4) or the income test of N.D.C.C. § 65–05.1–01(6)(a)(3).

## V

[¶ 24] We conclude that, under the 1999 statutory scheme, if an injured

worker cannot be returned to substantial gainful employment as defined under N.D.C.C. § 65–05.1–01(3) and does not have a retained earnings capacity to meet N.D.C.C. § 65–05.1–01(6)(a)(3), then the injured worker is entitled to temporary total disability benefits or permanent total disability benefits.

[¶ 25] This holding comports with the understood purpose of partial disability benefits and flows from the statute's plain language. The purpose of partial disability benefits is to assist individuals who can be returned to substantial gainful employment through rehabilitation, but will experience a decrease in earnings capacity upon return to the workforce. *See* 82 Am.Jur.2d *Workers' Compensation* § 380 (2003) ("disability is partial rather than total where the claimant is still capable of gainful employment subject to the disability, even though the disability prevents the claimant from returning to his or her former employment"). Partial disability benefits are for individuals who can return to substantial gainful employment, but at a lesser amount of income; they are not for injured workers who merely have some capacity to work. *Cf. Shiek v. N.D. Workers Comp. Bureau*, 1998 ND 139, ¶ 21, 582 N.W.2d 639 ("It would be illogical to require a claimant to prove he or she is totally disabled in order to qualify for benefits for temporary total or permanent total disability . . . ."). The benefits received represent the difference between pre- and post-injury earnings capacity.

[¶ 26] Section 65–05.1–01(6)(b), N.D.C.C., expressly provides that "[u]nder section 65–05–10, [WSI] shall award partial disability based on retained earnings capacity calculated under this section." If an injured worker cannot find employment meeting the income test under N.D.C.C. § 65–05.1–01(6)(a)(3), then the injured

worker is not eligible for a reduction to partial benefits. Under the 1999 statute, an injured worker must meet the requirements of N.D.C.C. § 65–05.1–01 before an award of partial disability benefits under N.D.C.C. § 65–05–10 can be contemplated. WSI concedes Rodenbiker does not meet the income test under N.D.C.C. § 65–05.1–01(6)(a)(3). Therefore, Rodenbiker does not have a retained earnings capacity sufficient to meet N.D.C.C. § 65–05.1–01(6)(b) and she is not eligible for partial disability benefits.

[¶ 27] As WSI notes, N.D.C.C. § 65–05–10 does state that an "employee's earnings capacity may be established by expert vocational evidence of a capacity to earn in the statewide job pool where the worker lives" and that "[a]ctual postinjury earnings are presumptive evidence of earnings capacity" in certain situations. These provisions provide means of evidencing earnings capacity, but do not dispense with the requirement of N.D.C.C. § 65–05.1–01 that an injured worker either be capable of a return to substantial gainful employment or have an earnings capacity satisfying the income test provided under N.D.C.C. § 65–05.1–01(6)(a)(3) before the injured worker's total disability benefits are reduced to partial disability benefits.

## VI

[¶ 28] Rodenbiker argues that the ALJ improperly applied the 2005 version of the WSI statute to Rodenbiker's case. Rodenbiker also argues that WSI's findings of fact are not supported by a preponderance of the evidence. Because we conclude as a matter of law that Rodenbiker is entitled to reinstatement of her total temporary disability benefits under the 1999 version of the statutes, we do not need to reach these issues.

## VII

[¶ 29] We, therefore, conclude that an injured worker's disability benefits cannot

be reduced to partial disability benefits under the 1999 statutes when the injured worker cannot be returned to substantial gainful employment as defined under N.D.C.C. § 65–05.1–01(3) and does not have a retained earnings capacity to meet N.D.C.C. § 65–05.1–01(6)(a)(3). We reverse the district court judgment affirming the order of WSI and remand for reinstatement of Rodenbiker's temporary total disability benefits.

[¶ 30] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, J., WILLIAM F. HODNY, S.J., STEVEN E. McCULLOUGH, D.J., concur.

[¶ 31] The Honorable STEVEN E. MCCULLOUGH, D.J., and The Honorable WILLIAM HODNY, S.J., sitting in place of SANDSTROM, J., and CROTHERS, J., disqualified.