Filed 5/3/12 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2012 ND 87

Robert Johnson, Appellant

v.

North Dakota Workforce 

Safety and Insurance Fund, Appellant Appellee

and 

Agri Cover, Inc., Respondent

No. 20110262

Appeal from the District Court of Stutsman County, Southeast Judicial District, the Honorable John T. Paulson, Judge.

AFFIRMED.

Opinion of the Court by Maring, Justice.

Steven L. Latham, P.O. Box 2056, Bismarck, N.D. 58502-2056, for appellant.

Shanon M. Gregor, Special Assistant Attorney General, P.O. Box 2626, Fargo, N.D. 58108-2626, for appellee.

Johnson v. WSI

No. 20110262

Maring, Justice.

[¶1] Robert Johnson appeals from the district court’s judgment affirming an administrative law judge’s (“ALJ”) decision that North Dakota Workforce Safety Insurance (“WSI”) is not liable for his right shoulder condition, and he has a retained earnings capacity of $290.00 per week.  A reasoning mind reasonably could have found Johnson failed to establish, by a preponderance of the evidence, that his right shoulder pain was substantially accelerated or substantially worsened by his work injury and vocational training, and WSI proved Johnson has a retained earnings capacity of $290.00 per week; therefore, we affirm.

I

[¶2] In April of 2001, Johnson suffered a back injury at work.  Johnson was able to return to work, but his back problems persisted.  He eventually was terminated from his employment in June of 2008, because he could no longer adequately perform his job.  Johnson was awarded temporary total disability benefits and began vocational rehabilitation.  As part of his vocational rehabilitation, Johnson began working on his General Educational Development High School Diploma (“GED”) and also taking computer and keyboarding instruction.  However, in November of 2008, Johnson began experiencing significant right wrist and right shoulder pain.  WSI accepted liability for fifty percent of Johnson’s right wrist problems but denied liability with respect to Johnson’s right shoulder issues.

[¶3] As part of a continuing effort to return Johnson to some form of work, an amended vocational consultant’s report (“VCR”) was issued in September of 2009.  It identified telephone sales representative as a viable position for Johnson.  Based on that position, WSI concluded Johnson had a retained earnings capacity of $318.00 per week.  Johnson requested a formal hearing regarding WSI’s decision that it was not liable for his right shoulder problems and that he had a retained earnings capacity of $318.00.

[¶4] During the hearing, WSI presented Johnson’s VCR.  In addition to its discussion of the telephone sales representative job, the VCR also contained references to a previous discussion between Johnson and the vocational consultant.  The VCR indicated the vocational consultant brought a Wal-Mart greeter position to Johnson’s attention.  According to the VCR and another exhibit introduced during the hearing, the vocational consultant told Johnson about two full-time greeter position openings in Jamestown, North Dakota, twenty-one miles from Johnson’s home in Pingree; explained the position was physically appropriate for him; and encouraged him to apply.  The vocational consultant’s notes explained Johnson decided not to apply because the wages were insufficient, and Johnson did not like interacting with other people.

[¶5] Following the administrative hearing, the ALJ found Johnson’s right shoulder pain coincided with and was triggered by the typing Johnson was doing as part of his GED course.  The ALJ did not find Johnson’s right shoulder pain was substantially accelerated or substantially worsened by the typing.  The ALJ also found Johnson, while not physically incapable of performing the telephone sales representative position, did not have the necessary skills to fulfill the job’s requirements.  However, based on the references to the available Wal-Mart greeter positions, the ALJ concluded Johnson has the ability to work as a greeter at Wal-Mart.  Because Johnson was released to work forty hours per week, the ALJ concluded Johnson has a retained earnings capacity of $290.00 per week, and awarded Johnson partial disability benefits.  The ALJ calculated the $290.00 retained earnings capacity by multiplying the State’s minimum wage at the time the VCR was filed, $7.25, by the forty hours per week Johnson was released to work a sedentary position.  Johnson appealed the ALJ’s decision to the district court which affirmed.  Johnson then appealed to this Court.

II

[¶6] In an appeal from a district court’s review of an administrative agency decision, we review the agency’s decision, not the district court’s decision.  
See
 
Spectrum Care v. Stevick
, 2006 ND 155, ¶ 8, 718 N.W.2d 593 (citing 
Baier v. Job Serv. N.D.
, 2004 ND 27, ¶ 6, 673 N.W.2d 923).  Under N.D.C.C. §§ 28-32-46 and 28-32-49, this Court must affirm the decision of an administrative agency unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency’s rationale for not adopting any contrary recommendations by a hearing officer or an administrative judge.

N.D.C.C. § 28-32-46; 
Bergum v. N.D. Workforce Safety & Ins.
, 2009 ND 52, ¶ 8, 764 N.W.2d 178.  This Court reviews the administrative agency’s decision, but “giv[es] due respect to the district court’s analysis and review.”  
Bergum
, 2009 ND 52, ¶ 8, 764 N.W.2d 178.  “[T]his Court does not make independent findings of fact or substitute its judgment for that of the administrative agency.”  
Rodenbiker v. Workforce Safety & Ins.
, 2007 ND 169, ¶ 14, 740 N.W.2d 831.  Rather, “we determine whether a reasoning mind reasonably could have decided the agency’s findings were proven by the weight of the evidence from the entire record.”  
Bergum
, at ¶ 9.  Finally, “[w]e do not give deference to the ALJ’s legal conclusions, and questions of law are fully reviewable on appeal.”  
Johnson v. N.D. Workforce Safety & Ins.
, 2012 ND 27, ¶ 9.

III

[¶7] Neither party alleges Johnson’s right shoulder problems are not a preexisting condition; rather, the dispute is whether Johnson’s condition was substantially worsened or substantially accelerated by his vocational rehabilitation.   Johnson argues a preponderance of the evidence supports a finding that his right shoulder pain was substantially accelerated or substantially worsened by the increased typing he did as part of his GED course.

[¶8] In order to receive WSI benefits, a claimant must prove, by a preponderance of the evidence, a compensable injury was suffered.  N.D.C.C. § 65-01-11 (1999)
(footnote: 0); 
Bergum
, 2009 ND 52, ¶ 11, 764 N.W.2d 178.  To carry this burden, the claimant must prove the “condition for which benefits are sought is causally related to a work injury.”  
Bergum
, at ¶ 11.  The definition of “compensable injury” excludes preexisting injuries “unless the employment substantially accelerates its progression or substantially worsens its severity.”  N.D.C.C. § 65-01-02(10)(b)(7) (1999).  Thus, a preexisting injury must have been substantially accelerated or substantially worsened by the claimant’s employment in order for the claimant to be entitled to benefits.  
Bergum
, at ¶ 12.  A compensable injury does not exist when the claimant’s employment merely triggers symptoms of the preexisting injury.  
Id.

[¶9] Johnson argues a preponderance of the evidence does not support the ALJ’s conclusion that his right shoulder problems were merely triggered, and not substantially accelerated or substantially worsened, by his work injury and subsequent vocational rehabilitation.  Johnson claims the only evidence presented regarding this issue was a report from Dr. Sollum in which the doctor opined Johnson’s right shoulder condition was substantially worsened or accelerated by the vocational rehabilitation, and his own testimony that his shoulder pain did not occur until he began the rehabilitation.

[¶10] In its decision, the ALJ addressed Dr. Sollum’s belief Johnson’s keyboarding may have caused an aggravation of his shoulder condition.  The ALJ noted this belief was expressed in the context of whether Johnson needed MRI (magnetic resonance imaging) and EMG (electromyogram) testing and not in the context of a diagnosis.  The ALJ also stated Dr. Sollum did not opine Johnson’s keyboarding and typing substantially accelerated or substantially worsened the severity of his shoulder condition, as Johnson claims.  The report on which Johnson relies for this assertion involves a diagnosis of his right wrist, not his right shoulder.  Based on the evidence presented to the ALJ, a reasoning mind could reasonably have determined Johnson’s claim that WSI is liable for his shoulder problems is not supported by a preponderance of the evidence.

IV

[¶11] Johnson argues a preponderance of the evidence does not support the ALJ’s conclusion he has a retained earnings capacity of $290.00 per week.

[¶12] One of the rehabilitative goals of North Dakota’s workforce safety and insurance law is “to return the disabled employee to substantial gainful employment with a minimum of retraining, as soon as possible after an injury occurs.”  N.D.C.C. § 65-05.1-01(3) (1999).

“Substantial gainful employment” means bona fide work, for remuneration, which is reasonably attainable in light of the individual’s injury, functional capacities, education, previous occupation, experience, and transferable skills, and which offers an opportunity to restore the employee as soon as practical and as nearly as possible to ninety percent of the employee’s average weekly earnings at the time of injury, or to sixty-six and two-thirds percent of the average weekly wage in this state on the date the rehabilitation consultant’s report is issued under section 65-05.1-02.1, whichever is less.

Id.
  “‘The purpose of defining substantial gainful employment in terms of earnings is to determine the first appropriate priority option’ in a hierarchy of statutory options that would return the employee to substantial gainful employment.”  
Rodenbiker
, 2007 ND 169, ¶ 17, 740 N.W.2d 831 (quoting N.D.C.C. § 65-05.1-01(3) (1999)).  The hierarchy of options are:

a. Return to the same position.

b. Return to the same occupation, any employer.

c. Return to a modified position.

d. Return to a modified or alternative occupation, any employer.

e. Return to an occupation within the local job pool of the locale in which the claimant was living at the date of injury or of the employee’s current address.

f. Return to an occupation in the statewide job pool which is suited to the employee’s education, experience, and marketable skills.

g. On-the-job training.

h. Short-term retraining of fifty-two weeks or less.

i. Long-term retraining of one hundred four weeks or less.

j. Self-employment.

N.D.C.C. § 65-05.1-01(4) (1999).  However, if none of the options are “viable, and will not return the employee to the lesser of sixty-six and two-thirds percent of the average weekly wage, or ninety percent of the employee’s preinjury earnings, the employee shall continue to minimize the loss of earnings capacity.”  N.D.C.C. § 65-

05.1-01(6)(a) (1999).  In order to minimize the loss of earnings capacity, the employee must:

[S]eek, obtain, and retain employment:

(1) That meets the employee’s functional capacities;

(2) For which the employee meets the qualifications to compete; and

(3) That will reasonably result in retained earnings capacity equivalent to the lesser of ninety percent of the employee’s preinjury earnings or the state’s current hourly minimum wage on the date the rehabilitation consultant’s report is issued.

Id.
  “The employee’s earnings capacity may be established by expert vocational evidence of a capacity to earn in the statewide job pool where the worker lives.”  N.D.C.C. § 65-05-10(3) (1999).  When an employee cannot be returned to substantial gainful employment under the hierarchy of options, but the employee does meet the income test under section 65-05.1-01(6)(a)(3), N.D.C.C., the employee is entitled to partial disability benefits.  N.D.C.C. § 65-05.1-01(6)(b) (1999); 
see
 
Rodenbiker
, 2007 ND 169, ¶ 24, 740 N.W.2d 831.

[¶13] Johnson does not dispute the ALJ’s finding that none of the hierarchy options are viable for him, but rather, he argues WSI failed to establish he has a retained earnings capacity.  He claims the ALJ went beyond the scope of the evidence when she concluded Johnson was capable of working as a Wal-Mart greeter and has a retained earnings capacity of $290.00 per week.  Johnson alleges no evidence was presented, either at the hearing or in the VCR, as to whether local or statewide job markets existed or whether he has the education, experience, and physical capabilities to work as a Wal-Mart greeter.  We disagree.  WSI presented evidence demonstrating Johnson has the necessary functional capacities and qualifications to compete for a job that will compensate him at the rate of North Dakota’s hourly minimum wage on the date the VCR was issued.

[¶14] In Johnson’s vocational rehabilitation file, Johnson’s consultant noted a discussion between her and Johnson in March of 2009 during which she informed Johnson of two full-time greeter positions at the Jamestown Wal-Mart.  According to her notes, she further explained these positions were physically appropriate for Johnson, started at $7.50 per hour, and encouraged him to apply.  The VCR indicates Johnson and his consultant again discussed a greeter position at Wal-Mart in June of 2009.  The comments in Johnson’s file and VCR show Johnson was unreceptive to the idea of working as a greeter both times it was suggested.

[¶15] Johnson was released to work forty hours per week at a sedentary job.  The evidence presented at the administrative hearing demonstrates Johnson has both the functional capacities and the qualifications to perform a sedentary job, such as greeter at Wal-Mart.  Further, because the North Dakota minimum wage was $7.25 per hour when the VCR was filed, a sedentary job paying Johnson at least the state’s minimum wage would meet the income test in the third prong of N.D.C.C. § 65-05.1-01(6)(a).  Based on our review of the record, because Johnson was released to work forty hours per week at a sedentary position, and jobs physically and cognitively appropriate for Johnson exist and meet the income test in section 65-05.1-01(6)(a)(3), a reasoning mind could reasonably have determined Johnson has a weekly retained earnings capacity of $290.00.

[¶16] We affirm the district court’s judgment upholding the ALJ’s decision that WSI is not liable for Johnson’s right shoulder condition and that Johnson has a retained earnings capacity of $290.00 per week.

[¶17] Mary Muehlen Maring

Daniel J. Crothers

Dale V. Sandstrom

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.

FOOTNOTES
0:
ぁン    
Because Johnson’s injury occurred in 2001, the statutes in effect on the date of his injury govern his right to collect WSI benefits.  
See
 
Tangen v. N.D. Workers Comp. Bureau
, 2000 ND 135, ¶ 12, 613 N.W.2d 490.