2012 ND 171

**Robert S. HEIER, Plaintiff and Appellant**

v.

**NORTH DAKOTA DEPARTMENT OF CORRECTIONS AND REHABILITA- TION, Defendant and Appellee.**

No. 20120128.

Supreme Court of North Dakota.

Aug. 16, 2012.

Michael J. Geiermann (argued), and Jacob Geiermann (appeared), third-year law student, under the Rule on Limited Practice of Law by Law Students, Bismarck, N.D., for plaintiff and appellant.

Kirsten R. Franzen, Assistant Attorney General, Bismarck, N.D., for defendant and appellee.

KAPSNER, Justice.

[¶ 1] Robert Heier appeals from a district court judgment affirming an administrative law judge's ("ALJ") decision affirming the termination of Heier's employment with the Department of Corrections and Rehabilitation. We reverse, concluding Heier was unlawfully disciplined multiple times for one instance of misconduct, and we order Heier be reinstated and receive backpay.

I

[¶ 2] Heier was employed by the Department as a deputy warden in the Division of Adult Services at the North Dakota State Penitentiary. On April 28, 2009, Jessica Rahn, a State Penitentiary employee, filed a written complaint with her supervisor, alleging that Heier inappropriately grabbed her buttocks at a concert outside of work on April 18, 2009, and that Heier said, "Tell anyone and you'll loose [sic] your job." Rahn's supervisor reported the incident to Timothy Schuetzle, the State Penitentiary warden, and Larry Tice, a human resource officer. Leann Bertsch, the Department director, Warren Emmer, the adult services director, and Tracy Stein, the Department human resource director, were also informed of the incident.

[¶ 3] Schuetzle spoke with Heier about the allegations. On May 6, 2009, Schuetzle sent Heier a letter, advising Heier of the Department's intent to take disciplinary action based on Rahn's allegations that Heier grabbed her buttocks and that Heier said she would lose her job if she told anyone about his actions. On May 7, 2009, Heier filed a written response, stating, "I honestly do not remember saying anything to the employee about losing her job of [sic] she told anyone of my inappropriate actions. I was inebriated at the time and if the employee claims I said this I cannot honestly deny it. I will take whatever punishment is recommend [sic] and assure you this type of behavior will never happen again." After receiving Heier's response, Schuetzle sent Heier a final action notice, informed Heier of the final decision to take disciplinary action for the April 18, 2009, incident and stated:

> In your response you state that you do not remember saying anything to the employee but then say that you could have said this and you will take the punishment for it. Similarly, you state that you did grab the buttocks of the employee and that you will take any recommended punishment.
>
> . . . . .

Based on this information, a decision has been made to suspend you without pay for a period of 1 day. This day will be designated as May 18, 2009. Any further violations of this nature may result in further disciplinary action up to and including termination.

The letter also advised Heier of his right to appeal the decision. Heier did not appeal Schuetzle's decision.

[¶ 4] On July 9, 2009, Stein sent Heier a letter advising him that he would not receive a general and equity pay increase because the Department decided that employees who were suspended from work after March 1, 2009, did not qualify for the pay increase.

[¶ 5] On August 26, 2009, Bertsch sent a memo to Department supervisors and managers, which was later distributed to all employees, directing staff to review the Department's sexual harassment policy. A memo was also sent to employees stating, "Staff that believe that any grievance related to the noted behaviors has not been adequately addressed by their supervisor are encouraged to contact their Division Deputy Director and/or their Director and/or the Director of Corrections and request that they review the circumstances related to the grievance." On August 27, 2009, Rahn sent Emmer a letter in response to the sexual harassment policy memo, stating she felt Heier's discipline following the April 18, 2009, incident was not sufficient or consistent with the Department's policy. The letter included Rahn's allegations that Heier threatened that she would lose her job if she told anyone about his conduct. Bertsch was informed of Rahn's letter.

[¶ 6] On August 31, 2009, Bertsch sent Heier a letter informing him that she was placing him on administrative leave pending an investigation into allegations he committed unwanted behavior or made threatening remarks to a female employee. Heier was interviewed about the incident on September 3, 2009. On September 10, 2009, Emmer sent Heier a letter advising him the Department intended to take disciplinary action for the April 18, 2009, incident involving Rahn. The letter stated Heier had been previously disciplined for the incident, but "[m]ore information has surfaced indicating more severe punishment may be warranted. For example, while your threat of retaliation initially could not be substantiated, you recently admitted threatening the employee with termination if she reported the incident."

[¶ 7] On September 15, 2009, Heier sent Emmer a letter stating he admitted to Schuetzle that he might have made the alleged threats, he was disciplined for touching and making all of the alleged statements, Schuetzle was fully aware of all of the allegations, there are not any new allegations, and he was disciplined for all of the alleged misconduct. Heier also alleged he was disciplined a second time in July 2009 when he did not receive an increase in pay due to the prior disciplinary action.

[¶ 8] On September 18, 2009, Emmer sent Heier a letter informing Heier he had completed a review of the incident and found Heier was not truthful when he was initially questioned about the April 18, 2009, incident, Heier continued to lie about the incident until September 2009, when he admitted he threatened Rahn's job, Heier's conduct violated Department policies, and Heier's employment was being terminated. The letter advised Heier he could appeal the decision through an internal grievance procedure.

[¶ 9] On September 23, 2009, Heier filed an internal employee grievance appealing the termination of his employment. On September 30, 2009, Bertsch denied Heier's grievance and upheld the termi-

nation of his employment, stating Heier's employment was terminated because he sexually harassed a female employee and not for his dishonesty during the original questioning, Heier was not disciplined initially for threatening Rahn's job, and the facts support the decision to terminate Heier's employment.

[¶ 10] In October 2009, Heier filed an appeal with Human Resources Management Services, arguing there was not cause to terminate his employment and he was disciplined three times for a single instance of misconduct. A hearing on Heier's appeal was held before an ALJ in April 2010. In October 2010, the ALJ affirmed the termination of Heier's employment.

[¶ 11] Heier appealed the ALJ's decision to the district court. The ALJ notified the parties that a transcript could not be made of the hearing due to technical problems with the recordings. The Department moved for remand to the ALJ for the creation of a replacement record. The district court ordered the appeal be "remanded to the administrative agency directing the ALJ to oversee the creation of a record that is sufficient to replace evidence lost when the original recording failed."

[¶ 12] On remand, the ALJ reviewed her notes from the hearing and affidavits from Bertsch, Schuetzle, and Emmer, the three witnesses that testified at the original hearing. The ALJ notified the parties that she wanted to hold a hearing to recreate the record of testimony from the previous hearing and that no new evidence or testimony would be allowed. In September 2011, a hearing was held to recreate the record of the three witnesses' testimony. The witnesses' affidavits were admitted, and Heier was given an opportunity to cross-examine the witnesses. In October 2011, the ALJ entered an order adopting her prior decision and certifying the record was sufficient to replace the lost evidence from the original hearing.

[¶ 13] The district court subsequently affirmed the ALJ's decision.

## II

[¶ 14] In an appeal from a district court's review of an administrative agency's decision, we review the agency's decision. *Johnson v. N.D. Workforce Safety and Ins. Fund,* 2012 ND 87, ¶ 6, 816 N.W.2d 74. Our review is limited, and we must affirm the agency decision unless:

1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. The provisions of [N.D.C.C. ch. 28–32] have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46. This Court determines whether a reasoning mind reasonably could have decided the agency's findings were proven by the weight of the evidence from the record. *Johnson,* at ¶ 6.

Questions of law are fully reviewable on appeal, and we do not give deference to the ALJ's legal conclusions. *Id.*

## III

[¶ 15] Heier argues the Department did not have the authority to punish him multiple times for one instance of misconduct. Heier claims he was punished three times, including his suspension, the denial of his pay increase, and the termination of his employment. Heier contends the ALJ's finding that his initial discipline was only for the inappropriate touching is not supported by the evidence and the ALJ's conclusion of law that he was not disciplined multiple times for the same offense is not supported by the findings and is not in accordance with the law.

### A

[¶ 16] Other jurisdictions have held a public employee may not be disciplined more than once for one incident of misconduct. *See e.g., State, Dep't of Transp. v. State, Career Serv. Comm'n,* 366 So.2d 473, 474 (Fla.Dist.Ct.App.1979); *Rochon v. Rodriguez,* 293 Ill.App.3d 952, 228 Ill.Dec. 416, 689 N.E.2d 288, 293 (1997); *Messina v. City of Chicago,* 145 Ill.App.3d 549, 99 Ill.Dec. 493, 495 N.E.2d 1228, 1232–33 (1986); *Hall v. Iowa Merit Emp't Comm'n,* 380 N.W.2d 710, 715–16 (Iowa 1986); *Lundy v. Univ. of New Orleans,* 728 So.2d 927, 929–30 (La.Ct.App.1999); *James v. Sewerage and Water Bd. of New Orleans,* 505 So.2d 119, 122 (La.Ct.App. 1987); *Department of Pub. Safety, Office of State Police v. Rigby,* 401 So.2d 1017, 1020 (La.Ct.App.1981); *Hamlett v. Division of Mental Health, La. Health & Human Res. Admin.,* 325 So.2d 696, 701 (La. Ct.App.1976); *Ladnier v. City of Biloxi,* 749 So.2d 139, 153 (Miss.Ct.App.1999); *Siler v. City of Harrisburg,* 54 Pa.Cmwlth. 303, 422 A.2d 704, 706–07 (1980); *In re*

*Appeal of Ditko,* 385 Pa. 435, 123 A.2d 718, 720 (1956).

[¶ 17] This Court has never directly addressed this issue. However, in *Nagel v. City of Bismarck,* 2004 ND 9, ¶ 16, 673 N.W.2d 267, we recognized other courts had held a public employee may not be disciplined multiple times for one instance of misconduct, but we distinguished those cases and held the employee in that case was not disciplined more than once because the second punishment was for the employee's failure to comply with the original discipline.

[¶ 18] Under our law for disciplining public employees, we conclude that a public employee cannot be disciplined multiple times for one instance of misconduct. Statutory law does not authorize the Department to discipline an employee multiple times for the same misconduct. An agency only has the authority or power granted to it by the legislature. *See First Bank of Buffalo v. Conrad,* 350 N.W.2d 580, 584–85 (N.D.1984). Section 54–44.3–12(1), N.D.C.C., authorizes the director of Human Resource Management Services to establish rules and regulations state agencies must follow for disciplinary actions. Chapter 4–07–19, N.D. Admin. Code, provides the rules and regulations state agencies must follow for disciplinary actions. *See* N.D. Admin. Code § 4–07–19–01. Under N.D. Admin. Code § 4–07–19–03, an employee may only be disciplined for cause. The agency is required to provide the employee with written preaction notice when suspension without pay, demotion, or dismissal is being considered. N.D. Admin. Code § 4–07–19–05. Once the final decision has been made to discipline an employee, the agency is required to provide written notice of the final action to be taken. N.D. Admin. Code § 4–07–19–06. An employee may appeal a demotion, suspension, or dismissal using the agency's

grievance procedure or by appealing directly to Human Resource Management Services. *Id.; see also* N.D. Admin. Code §§ 4–07–20.1–03 and 4–07–20.1–06. These provisions of the Administrative Code indicate the disciplinary action is complete after the final decision unless the employee appeals the decision. Once an agency's decision has become final, there is no statutory authority authorizing subsequent agency review.

■ [¶ 19] Furthermore, it is fundamentally unfair to reopen the issue and increase the punishment when the same misconduct is the sole basis for the increase in punishment. *See State, Dep't of Transp.*, 366 So.2d at 474; *Messina*, 99 Ill.Dec. 493, 495 N.E.2d at 1233; *Siler*, 422 A.2d at 706. An employee is entitled to know when his or her liability for misconduct has ended and when his or her employment is secure. *Messina*, at 1233.

■ [¶ 20] In this case, the ALJ concluded Heier's conduct on April 18, 2009, violated Department policies concerning workplace threats, hostile work environment, and sexual harassment, and there was cause to discipline Heier. In addressing Heier's argument that he was disciplined multiple times for the same misconduct, the ALJ concluded the Director has the discretion to revisit and correct management problems and has the authority to terminate employees. The ALJ found Bertsch and Emmer were not aware of the threats Heier made, Bertsch and Emmer reopened the investigation when they became aware of the threats, and Heier had not been disciplined for the threats before his employment was terminated because the "one day suspension was imposed as a disciplinary action for the inappropriate touching only." The ALJ concluded the Department had a duty to take action when it became aware of the full extent of Heier's inappropriate conduct. The ALJ

concluded Heier was not disciplined twice for the same misconduct:

> Heier was not disciplined multiple times for the same offense. The suspension without pay imposed by Warden Schuetzle was for grabbing Rahn's buttocks. Heier was terminated for not only grabbing Rahn's buttocks, but also for threatening her employment if she told anyone of Heier's inappropriate conduct. Those are different reasons for the two disciplinary actions.

[¶ 21] A preponderance of the evidence does not support the ALJ's finding that the one-day suspension was only imposed for the inappropriate touching. In May 2009, Heier received a one-day suspension for the April 18, 2009, incident. In Rahn's initial complaint, she alleged Heier threatened that she would lose her job if she told anyone about his conduct. There was evidence Schuetzle was aware of this allegation when he decided what discipline would be appropriate. Heier's letter to Schuetzle said that he could not deny Rahn's allegation he threatened her job and that he would take whatever punishment was recommended. Schuetzle's final decision states that the suspension was ordered based on Heier's admissions, including that he could have threatened Rahn's job and that he would take any recommended punishment. Schuetzle's decision reflects Heier was disciplined for both the inappropriate touching and for threatening Rahn's job. On that record, the evidence does not support the ALJ's finding that the "one day suspension was imposed as a disciplinary action for the inappropriate touching only."

[¶ 22] The ALJ also incorrectly concluded Heier was not disciplined multiple times for the same misconduct because Heier's employment was terminated for threatening Rahn, Bertsch and Emmer did not know Heier threatened Rahn, and

Schuetzle discounted the allegations about the threat when he decided to suspend Heier for one day. Although Bertsch and Emmer may not have known about the threats at the time of Heier's suspension, Bertsch delegated her authority to discipline Department employees to Schuetzle and Schuetzle was aware of all of the allegations, including the threats, when he disciplined Heier. The final decision on Heier's termination states his employment was not terminated for dishonesty during the initial investigation; rather, his employment was terminated for his sexual harassment of Rahn. Heier was terminated for the same conduct for which he received a one-day suspension.

■■ [¶ 23] The Department contends the Director's statutory authority to remove personnel supersedes any departmental policy and Bertsch's decision to terminate Heier's employment was within her statutory authority. The Director has authority to "employ and remove . . . personnel who may be deemed necessary by the director of the department." N.D.C.C. § 54–23.3–04(8). The Director also has the authority to "delegate authority to subordinates as necessary and appropriate." N.D.C.C. § 54–23.3–04(9). In this case, Bertsch delegated her authority to discipline Heier to Schuetzle. An agency's actions must be authorized by statute, *see Hecker v. Stark Cnty. Soc. Serv. Bd.*, 527 N.W.2d 226, 232 (N.D.1994), and once a disciplinary decision is final under N.D. Admin. Code § 4–07–19–06 without appeal there is no statutory support for subsequent review. After Heier's initial suspension became final, there was no statutory support for subsequent review or further discipline. Although Bertsch may not agree with Schuetzle's disciplinary decision, she delegated her authority to Schuetzle and she did not have any authority to review his decision or to impose

further discipline for the same conduct once Schuetzle's decision became final.

B

■■ [¶ 24] Heier contends he was disciplined a second time when the Department advised him he would not receive the general and equity increase in pay in July 2009.

[¶ 25] Heier was not entitled to an increase in his salary. The legislation increasing pay for state employees provides, "[i]t is the intent of the sixty-first legislative assembly that 2009–11 compensation adjustments for regular state employees are to vary based on documented performance and equity. . . . Employees whose overall documented performance level does not meet standards are not eligible for any salary increase." 2009 N.D. Sess. Laws ch. 15, § 11. The letter advising Heier he would not receive the pay increase states:

> The [Department] has taken the position that employees, who have a suspension from work from March 1, 2009 to the present but received no action plan with that disciplinary action, will not receive the general and equity increase at this time. House Bill 1015 states that employees with documented performance that do not meet the standards are not eligible for the general and equity increase.

Heier was not entitled to an increase in his salary. The denial of a pay increase was not a form of discipline because Heier was not entitled to the raise.

[¶ 26] Furthermore, the Department did not deny Heier a pay increase based on his sexual harassment of a coworker; rather, he did not receive the increase because he had been disciplined and his performance did not meet standards. The failure to give Heier a raise was not a form of discipline for the April 18, 2009, incident.

## C

[¶ 27]  We conclude the Department did not have the authority to punish Heier twice for the same misconduct, and Heier's suspension and his termination were punishment for the same misconduct. The evidence does not support the ALJ's finding and the ALJ's decision is not in accordance with the law.

## IV

[¶ 28]  Heier argues the ALJ erred in allowing the introduction of affidavits to create a record for the appeal to the district court. He claims the ALJ should have held a full hearing.

[¶ 29]  An agency is required to maintain an official record of each adjudicative or other administrative proceeding it hears. N.D.C.C. § 28–32–44(1). The official record includes "[t]he transcript of the hearing prepared for the person presiding at the hearing, including all testimony taken, and any written statements, exhibits, reports, memoranda, documents, or other information or evidence considered before final disposition of proceedings." N.D.C.C. § 28–32–44(4)(h).

[¶ 30]  After the parties were advised there was a problem with the recording of the hearing, the district court remanded the matter to the ALJ "directing the ALJ to oversee the creation of a record that is sufficient to replace evidence lost when the original recording failed." This is consistent with this Court's decision in *Masset v. North Dakota Dep't of Transp.,* 2010 ND 211, ¶ 9, 790 N.W.2d 481, in which part of a witness's testimony was not recorded and we remanded to the agency to produce a correct record. We said the hearing officer must recreate the record "which is sufficient in the hearing officer's discretion to replace evidence lost when the original recording failed." *Id.* On remand, the ALJ allowed the parties to submit affida-vits from the witnesses who testified and allowed cross-examination of those witnesses. In the order on rehearing, the ALJ said, "the purpose of the rehearing was to create a record sufficient to replace evidence lost from the original hearing, not to hold a new or *de novo* hearing. I am confident that the record is now sufficient for the Court's review and I hereby certify the same." Heier was allowed to cross-examine the witnesses, he does not allege there is any evidence missing from the record, and he does not allege he was prejudiced by the recreated record. We conclude the ALJ did not abuse her discretion.

## V

[¶ 31]  We need not address the other issues Heier has raised in this appeal, because they are unnecessary to the decision. We conclude the Department improperly terminated Heier's employment and disciplined him multiple times for the same misconduct. We reverse the district court's judgment affirming the ALJ's decision. We order Heier be reinstated and receive all salaries and wages withheld since the date of termination. Heier was not entitled to the increase in pay he claims he should have received in July 2009 and that increased amount will not be included in the backpay.

[¶ 32] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and DALE V. SANDSTROM, JJ., concur.

SANDSTROM, Justice, concurring.

[¶ 33]  I agree with the majority opinion and write separately only to note that the opinion would not necessarily preclude revisiting discipline in a case of collusion or joint misconduct by an employee and su-

pervisor. There is no allegation of either in this case.

[¶ 34]   Dale V. Sandstrom