Harlan PLEINIS, Appellee,

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU,** Appellant.

Civ. No. 910041.

Supreme Court of North Dakota.

June 25, 1991.

Kenneth S. Rau, of Moench Law Firm, Bismarck, for appellee.

Dean J. Haas, Asst. Atty. Gen., N.D. Workers Compensation Bureau, Bismarck, for appellant.

VANDE WALLE, Justice.

The Workers Compensation Bureau appealed from a district court judgment reversing its order denying a claim by Harlan J. Pleinis for further benefits. We reverse the judgment and reinstate the Bureau's order.

Pleinis initially received medical benefits from the Bureau for a "[l]ocalized contusion and strain of the medial aspect of the right knee" which occurred on September 25, 1984, when he slipped and fell while getting into a pickup truck while at work. X-rays of Pleinis's knee taken at that time indicated that he had osteoarthritis. Pleinis returned to work and received no further medical treatment for his knee until he consulted Dr. Raymond S. Gruby on March 8, 1989. According to Pleinis, he had problems with his knee after the 1984 injury and those problems progressively worsened until he quit his job in 1989. On August 7, 1989, Pleinis filed a claim for further benefits. The Bureau denied his claim, and he requested a rehearing.

At the rehearing Dr. Gruby testified by deposition that the 1984 injury may have aggravated the osteoarthritis in Pleinis's knee; however, Gruby further explained that the x-rays in 1984 indicated that Pleinis had arthritis in his knee before the injury and that it did not cause the osteoarthritic changes. Dr. Gruby opined that Pleinis's arthritic changes were a natural progression of the osteoarthritic condition. Dr. Gruby testified:

"Q. [Mr. Haas] Now, the essence in this case, Doctor, is whether this injury of September 25, 1984, which has been diagnosed as a contusion and a strain of the right knee had a significant impact given this natural progression of the osteoarthritis. I want to make sure that you understand what I'm asking here. The question is: Do you think that if he had not had, for example, the September 25, 1984, injury, do you think the osteoarthritis would have progressed in the manner that it did, anyway?

"A. [Dr. Gruby] Yes, sir.

"Q. And I'll ask it another way just so that we are sure of your answer. Doctor, in your opinion, did the 9/25/84 injury significantly cause a progression of the underlying osteoarthritis that wouldn't have happened but for the injury or created a worsening of that injury that wouldn't have otherwise happened?

"A. I don't believe it did.

\*　\*　\*　\*　\*　\*

"Q. [Mr. Rau] Now, I want to ask this last question one more time because I think that there has been some ambiguity in the record up to now. Is it fair to state your opinion that the fall in 1984 caused a significant aggravation of Mr. Pleinis's arthritic condition?

"A. To clarify the ambiguity, the way I view the fall is that the fall caused discomfort and swelling and began uncovering the arthritic process that was already there. I don't think that it accelerated the arthritic process. I don't think it knocked off a piece of bone or in that way caused a rapid acceleration of the osteoarthritis that was already there.

\*　\*　\*　\*　\*　\*

"Q. (MR. HAAS CONTINUING) And that then in choosing between two theo-

ries, one, that it's a natural progression and the second that the work injury of September 25, 1984, was a substantial accelerating factor, you would choose the former theory, that it was a natural progression; is that fair?

"A. Yes, sir."

Pleinis testified that he did not have any problems with his right knee before the 1984 injury. He also testified that when he returned to work after the injury, he had to wrap his knee to alleviate the pain and that he quit his job in 1989 because of his knee problems.

The Bureau denied Pleinis's claim for further benefits, finding that:

"VI.

"Following claimant's work injury of September 25, 1984, x-rays were taken. Those x-rays indicated that claimant had degenerative changes with bone spurs being formed. Dr. Gruby indicated that those x-rays showed that the claimant had osteoarthritis. The physician further testified that the osteoarthritic process was independent of the September 25, 1984, work injury.

"VII.

"Following claimant's September 25, 1984, work injury, claimant returned to work until approximately July of 1989. There is no evidence that claimant sought medical treatment in that interval. Claimant testified that his problems were getting progressively worse.

"VIII.

"Dr. Gruby testified at his deposition that claimant's underlying osteoarthritic changes were progressing over this period of time. The physician did not believe that the claimant's work injury of September 25, 1984, substantially contributed to the acceleration or progression of the arthritic condition. The physician indicated that a natural progression of the arthritic condition could likely explain claimant's condition and disability.

"IX.

"Dr. Gruby's opinion that the condition is primarily that of a natural progression of osteoarthritic changes is consistent with the history provided by the claimant.

\*     \*     \*     \*     \*     \*

"II.

"Claimant has failed to prove a cause and effect relationship between his September 25, 1984, injury and his current osteoarthritic condition which is disabling."

Pleinis appealed to the district court which initially concluded that it was

"unable to understand the rationale for the agency order in this case. The agency's findings and conclusions are not in any manner related to the provisions of [Section] 65–01–02(8)(b)(6), and are mere generalities. Based on such generalities, I am unable to discern the reasoning of the agency and to conduct a review. The sole conclusion stated is lack of proof of cause and effect. In view of the detailed statutory structure in the above quoted statute, the agency is obligated under [Section] 28–32–13 to make findings and conclusions so that this court can understand the basis of the agency's decision."

The court remanded to the Bureau for additional findings of fact and conclusions. The Bureau made additional findings that Pleinis "failed to prove a cause and effect relationship between his current condition and his work injury"; that his "current condition [was] due to a pre-existing osteoarthritic condition which would have progressed similarly in the absence of his work injury"; and that his current condition was "due to a natural progression of his osteoarthritic condition."

The district court reversed the Bureau's decision, concluding that its findings of fact were not supported by a preponderance of the evidence and its decision was not in accordance with the law. The court reasoned:

"The decision of the Workers Compensation Bureau fails to give due consideration to the applicable law, and therefore,

does not contain appropriate findings and conclusions. The applicable law is [Section] 65–01–02(8)(b)(6) and the findings are incomplete so as to disqualify [Pleinis] under this statute."

■ In an appeal to this court from a district court judgment reviewing a decision of an administrative agency, we review the record before the administrative agency and its decision rather than the decision of the district court. *Plante v. North Dakota Workers Compensation Bureau*, 455 N.W.2d 195 (N.D.1990). Our review of administrative agency decisions is governed by Section 28–32–19, N.D.C.C., which requires a three-step process to determine (1) if the findings of fact are supported by a preponderance of the evidence; (2) if the conclusions of law are supported by the findings of fact; and (3) if the agency decision is supported by the conclusions of law. *Schmalz v. North Dakota Workers Compensation Bureau*, 449 N.W.2d 817 (N.D.1989). In determining whether an administrative agency's findings of fact are supported by a preponderance of the evidence, we do not make independent findings of fact or substitute our judgment for that of the agency; rather, we determine only whether a reasoning mind could have reasonably determined that its factual conclusions were supported by the evidence. *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214 (N.D.1979). An administrative agency's findings of fact must be adequate so that the reviewing court can understand the basis of the agency's decision. *Walter v. North Dakota State Highway Commissioner*, 391 N.W.2d 155 (N.D.1986); *Matter of Boschee*, 347 N.W.2d 331 (N.D.1984).

The Bureau asserts that its findings adequately explain its determination that the work-related injury suffered by Pleinis in 1984 did not substantially aggravate or accelerate his osteoarthritis under Section 65–01–02(8)(b)(6), N.D.C.C. The Bureau argues that a reasoning mind could have reasonably made that factual determination and therefore its findings of fact are supported by a preponderance of the evidence. Pleinis responds that his osteoarthritis had not "clearly manifested itself prior" to the injury in 1984 and therefore the predicate determination for a finding of noncompensability under Section 65–01–02(8)(b)(6), N.D.C.C., was not met. Pleinis also argues that his 1984 injury substantially aggravated or accelerated his osteoarthritis.

■ The primary issue is whether Pleinis's condition is a compensable injury under Section 65–01–02(8)(b)(6), N.D.C.C. Although the Workers Compensation Act must be liberally construed in favor of workers so that its benefit provisions can be extended to all who can fairly be brought within them, e.g., *Syverson v. N.D. Workmen's Compensation Bureau*, 406 N.W.2d 688 (N.D.1987), we are not free to ignore the plain and ordinary language of the statute. *Souris River Telephone Mutual Aid Cooperative v. North Dakota Workers Compensation Bureau*, 471 N.W.2d 465 (N.D.1991); *Schaefer v. North Dakota Workers Compensation Bureau*, 462 N.W.2d 179 (N.D.1990).

■ Section 65–01–02(8), N.D.C.C., defines "compensable injury" and provides:
"b. The term 'compensable injury' does not include:

\* \* \* \* \* \*

"(6) Injuries attributable to a preexisting injury, disease, or condition which clearly manifested itself prior to the compensable injury. This does not prevent compensation where employment substantially aggravates and acts upon an underlying condition, substantially worsening its severity, or where employment substantially accelerates the progression of an underlying condition. However, it is insufficient to afford compensation under this title solely because the employment acted as a trigger to produce symptoms in a latent and underlying condition if the underlying condition would likely have progressed similarly in the absence of such employment trigger, unless the employment trigger is also deemed a substantial aggravating or accelerating factor. An underlying condition is preexisting injury, disease, or infirmity."

Section 65–01–02(8)(b)(6), N.D.C.C., defines a "compensable injury" within the context of "[i]njuries attributable to a

preexisting injury, disease, or condition." The first sentence of that subsection unambiguously says that "[i]njuries attributable to a preexisting injury, disease, or condition which clearly manifested itself prior to the compensable injury" are not compensable. The second sentence explains that the situation described in the first sentence does not prevent compensation where employment substantially aggravates and acts upon an underlying preexisting condition, substantially worsening its severity, or where employment substantially accelerates the progression of the preexisting underlying condition. The third sentence describes the consequences when employment acts as a trigger to produce symptoms in a "latent and underlying condition."[1] In that situation compensation is not allowed if the underlying condition would likely have progressed similarly in the absence of an employment trigger, unless the employment trigger is a substantial aggravating or accelerating factor.

The statutory language unambiguously describes when compensation is allowed for injuries attributable to both a latent underlying condition and an underlying condition which clearly manifested itself prior to the compensable injury. In both situations injuries attributable to the preexisting condition are compensable if employment substantially aggravates or accelerates the condition. We therefore disagree with Pleinis's contention that a predicate determination for a finding of noncompensability under Section 65–01–02(8)(b)(6), N.D.C.C., is that a preexisting underlying condition must clearly manifest itself prior to a compensable injury. Rather, the statute focuses on whether the underlying condition would likely have progressed similarly in the absence of employment, or whether the employment substantially aggravated or accelerated the condition.

In this case the Bureau's findings recite Dr. Gruby's opinion that Pleinis's "osteoarthritic process was independent" of the 1984 injury; that the 1984 injury had not "substantially contributed to the acceleration or the progression of the arthritic condition"; and that Pleinis's condition was the "natural progression of osteoarthritic changes" which was "consistent with the history provided by" Pleinis. Dr. Gruby's opinion follows the third sentence of Section 65–01–02(8)(b)(6), N.D.C.C.

In concluding that Pleinis had failed to prove a cause and effect relationship between the 1984 injury and his current osteoarthritic condition, the Bureau essentially adopted Dr. Gruby's opinion. Although the Bureau did not make a specific finding that Pleinis's underlying condition was latent, its findings are adequate to enable us to understand the basis for its decision that Pleinis's employment was not a substantial or accelerating factor of his underlying condition and that his underlying condition would likely have progressed similarly in the absence of his employment.[2] We conclude that a reasoning mind could have reasonably reached that factual conclusion. The Bureau's decision is therefore supported by a preponderance of the evidence, and under Section 65–01–02(8)(b)(6), N.D.C.C., its denial of further benefits is supported by its findings of fact.

Accordingly, the district court judgment is reversed and the Bureau's order is reinstated.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.

1. Webster's New World Dictionary, Second College Edition (1980), defines "latent" as "present but invisible or inactive; lying hidden and undeveloped within a person or thing, as a quality or power." In contrast, the same source defines "manifest" as "apparent to the senses, esp. that of sight, or to the mind; evident; obvious; clear; plain." Words used in statutes are to be understood in their ordinary sense unless a contrary intention plainly appears and absent a statutory definition. Section 1–02–02, N.D.C.C.

2. The findings of the Bureau should have been specific particularly in view of the district court's remand to the Bureau for the purpose of preparing findings more responsive to the provisions of Section 65–01–02(8)(b)(6), N.D.C.C. At that point the Bureau knew or should have known that the district court considered the findings inadequate to meet the statutory criteria for a finding of noncompensability.