2012 ND 164

**James MICKELSON, Appellant**

v.

**NORTH DAKOTA WORKFORCE SAFETY AND INSURANCE, Appellee**

and

**Gratech Company, Ltd., Respondent.**

No. 20110232.

Supreme Court of North Dakota.

Aug. 16, 2012.

Dean J. Haas, Bismarck, N.D., for appellant.

Jacqueline S. Anderson, Special Assistant Attorney General, Fargo, N.D., for appellee.

KAPSNER, Justice.

[¶ 1] James Mickelson appeals from a judgment affirming a Workforce Safety and Insurance ("WSI") decision denying his claim for workers' compensation bene-

fits. He argues WSI erred in deciding he did not suffer a compensable injury. We conclude WSI misapplied the definition of a compensable injury, and we reverse and remand for further proceedings.

## I

[¶ 2]   On December 17, 2009, Mickelson applied to WSI for workers' compensation benefits, claiming he "developed soreness in lower back due to repetitive motion over time using foot pedal and driving over rough terrain" on August 30, 2009, while employed as an equipment operator for Gratech Company, Ltd. According to Mickelson, he began working for Gratech on July 29, 2009, as an equipment operator, and he generally worked twelve-hour days, sitting in a pay loader and operating it with his right foot. Mickelson reported he operated the pay loader over rough terrain, which resulted in significant jarring and jolting. He claimed that before working for Gratech, he had not had any lower back pain, or pain radiating into his right leg. According to Gratech, Mickelson did not miss any work because of an injury from July 29 through December 3, 2009, when he was laid off, and he did not report the injury to Gratech until December 14, 2009.

[¶ 3]   On August 30, 2009, Mickelson saw Dr. Matthew Goehner, a chiropractor, and Dr. Goehner's contemporaneous office note stated Mickelson had "pain across the lower back and pain/numbness into the right thigh and calf to foot" and diagnosed "[l]umbosacral region dysfunction with associated soft tissue damage causing nerve root irritation, lumbosacral strain from repetitive foot control use." Mickelson did not seek further treatment from Dr. Goehner until December 7, 2009, and he also saw Dr. Goehner for treatment five more times in December 2009, and once in January 2010. Dr. Goehner's notes state Mick-

elson reported low back pain with right leg numbness after standing for ten minutes and describe a decreased range in motion. In January 2010, Mickelson received treatment from Linda Regan, a physician assistant. An x-ray indicated "[m]ild degenerative changes of the lumbar spine," and Regan's preliminary report stated "[n]o degenerative joint disease seen" and "[l]umbar strain with right radiculopathy on standing." A January 2010 MRI of Mickelson's lumbosacral spine revealed "moderate to severe degenerative disk disease with a central disk protrusion at L5–S1." Regan later wrote a letter "to whom it may concern," stating that because Mickelson did not have back pain before operating the pay loader, "the combination of the rough terrain, using heavy equipment, sitting in one position for several hours at a time and also only using his right leg has caused the back pain with right leg radiculopathy for which he originally sought care." Mickelson also received treatment from Julie Schulz, a physical therapist, and she wrote a letter "to whom it may concern," stating Mickelson's "injury is directly related to his work situation. He did not have prior back pain. This is a reasonable mechanism of injury for this problem."

[¶ 4]   In April 2010, Dr. Goehner also wrote a letter "[t]o whom it may concern," stating Mickelson had

> not presented with any lower back problems prior to 8/30/09. [His] injury is directly related to his job duties at work which included repetitive foot control use which caused stress to the muscles, ligaments, and joints of the lower back and pelvis. Following the injuries to the lower back [Mickelson] was diagnosed with degenerative disk disease. As you know, degenerative disk disease is a condition that develops over time and is a normal part of the aging process. Mr. Mickelson did not have any of the symp-

toms of degenerative disk disease prior to performing his job duty of repetitively using the foot controls and driving over rough terrain.

[¶ 5] Meanwhile, in February 2010, WSI initially denied Mickelson's claim for benefits, stating the January 2010 MRI revealed preexisting degenerative conditions or arthritis and concluding his "one month employment with Gratech triggered symptoms of [his] pre-existing degeneration but did not cause the condition and [he] did not report an injury to Gratech until 12/14/2009." Mickelson requested reconsideration, claiming his work substantially worsened his condition and he had never had prior lumbar spine problems. In March 2010, Dr. Gregory Peterson, a WSI medical consultant, conducted a record review and reported Mickelson's condition of "lumbar degenerative disc disease [was] not caused by his reported work injury. Repetitive motion on rough ground while operating a loader may trigger symptoms associated with lumbar degenerative disc disease, but not cause, substantially worsen, or substantially accelerate the condition." In March 2010, WSI again denied Mickelson's claim, relying on Dr. Peterson's review and concluding Mickelson had "not proven that his work activities substantially accelerated the progression of or substantially worsened the severity of his lumbar spine condition."

[¶ 6] Mickelson sought a formal administrative hearing, and an administrative law judge ("ALJ") was designated to issue a final decision on his claim. *See* N.D.C.C. § 65–02–22.1. After an administrative hearing, the ALJ affirmed WSI's denial of benefits, concluding Mickelson failed to establish he suffered a compensable injury during the course of his employment. The ALJ explained Mickelson had preexisting degenerative disc disease and his low-back pain and right leg pain and numbness were symptoms of his degenerative disc disease. The ALJ said Mickelson's employment triggered his symptoms of degenerative disc disease, but there was no evidence his employment substantially accelerated the progression or substantially worsened the severity of the degenerative disc disease. The ALJ rejected Mickelson's argument that triggering of symptoms constitutes a substantial worsening of his degenerative disc disease, concluding that interpretation would render the "trigger" language of N.D.C.C. § 65–01–02(10)(b)(7) meaningless. The ALJ also rejected Dr. Goehner's assessment of a lumbosacral strain from repetitive foot control use, concluding his assessment was not consistent with his later opinion that Mickelson's symptoms stem from degenerative disc disease. The district court affirmed the ALJ's decision.

## II

[¶ 7] Under the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32, courts exercise limited appellate review of a final order by an administrative agency. *Workforce Safety & Ins. v. Auck*, 2010 ND 126, ¶ 8, 785 N.W.2d 186. Under N.D.C.C. §§ 28–32–46 and 28–32–49, the district court and this Court must affirm an order by an administrative agency unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46.

[¶ 8] In reviewing an ALJ's factual findings, a court may not make independent findings of fact or substitute its judgment for the ALJ's findings; rather, a court must determine only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. *Auck*, 2010 ND 126, ¶ 9, 785 N.W.2d 186. When reviewing an appeal from a final order by an independent ALJ, similar deference is given to the ALJ's factual findings, because the ALJ has the opportunity to observe witnesses and the responsibility to assess the credibility of witnesses and resolve conflicts in the evidence. *Id.* Similar deference is not given to an independent ALJ's legal conclusions, however, and a court reviews an ALJ's legal conclusions in the same manner as legal conclusions generally. *Id.* Questions of law, including the interpretation of a statute, are fully reviewable on appeal. *Id.*

### III

[¶ 9] Mickelson argues he suffered a compensable injury, because his employment caused a substantial worsening of the symptoms of his previously asymptomatic degenerative disc disease. He argues pain can be a substantial wor-sening of his condition and the triggering of degenerative disc disease from no symptoms to a disabling condition that requires medical care is compensable as a significant worsening of the clinical picture of his condition.

[¶ 10] The parties agree the provisions for aggravation in N.D.C.C. § 65–05–15 are not applicable to Mickelson's claim, because the language of that statute applies to "a prior injury, disease, or other condition, known in advance of the work injury," or to the "progression of a prior compensable injury." N.D.C.C. § 65–05–15(1) and (2). *See Mikkelson v. North Dakota Workers Comp. Bureau*, 2000 ND 67, ¶¶ 12–17, 609 N.W.2d 74. There is no evidence in this record that Mickelson knew about his lower back injury, disease, or other condition before he operated the loader for Gratech, and the ALJ found "there is no evidence ... Mickelson had these symptoms [of low back pain and right leg radiculopathy] before he operated the loader for Gratech." Rather, the issue in this case involves whether Mickelson suffered a compensable injury.

[¶ 11] Claimants have the burden of proving by a preponderance of evidence they have suffered a compensable injury and are entitled to workers' compensation benefits. N.D.C.C. § 65–01–11; *Bergum v. Workforce Safety & Ins.*, 2009 ND 52, ¶ 11, 764 N.W.2d 178. To carry this burden, a claimant must prove the "condition for which benefits are sought is causally related to a work injury." *Bergum*, at ¶ 11. To establish a casual connection, a claimant must demonstrate the claimant's employment was a substantial contributing factor to the injury and need not show employment was the sole cause of the injury. *Bruder v. Workforce Safety & Ins.*, 2009 ND 23, ¶ 8, 761 N.W.2d 588.

[¶ 12] Section 65–01–02(10), N.D.C.C., defines a "compensable injury" under workers' compensation law, and provides, in relevant part:

10. "Compensable injury" means an injury by accident arising out of and in the course of hazardous employment which must be established by medical evidence supported by objective medical findings.

. . . .

b. The term does not include:

. . . .

(7) Injuries attributable to a preexisting injury, disease, or other condition, including when the employment acts as a trigger to produce symptoms in the preexisting injury, disease, or other condition unless the employment substantially accelerates its progression or substantially worsens its severity.

[¶ 13] In discussing the language of N.D.C.C. § 65–01–02(10)(b)(7), this Court has said "a preexisting injury must have been substantially accelerated or substantially worsened by the claimant's employment in order for the claimant to be entitled to benefits," and a "compensable injury does not exist when the claimant's employment merely triggers symptoms of the preexisting injury," disease, or other condition. *Johnson v. Workforce Safety & Ins.*, 2012 ND 87, ¶ 8, 816 N.W.2d 74. *See also Bergum*, 2009 ND 52, ¶ 12, 764 N.W.2d 178. Under N.D.C.C. § 65–01–02(10)(b)(7), this Court's decisions about a compensable injury in the context of a lower back claim generally involve a history of back-related injuries before a work incident. *See Curran v. Workforce Safety & Ins.*, 2010 ND 227, ¶¶ 1, 3, 791 N.W.2d 622; *Bergum*, at ¶ 2; *Bruder*, 2009 ND 23, ¶ 2, 761 N.W.2d 588. Those decisions have generally recognized that whether a compensable injury exists in-

volves a factual determination, but we have not otherwise analyzed the distinction between compensability when employment substantially accelerates the progression or substantially worsens the severity of a preexisting injury, disease, or other condition and noncompensability when employment acts as a trigger to produce symptoms in the preexisting injury, disease, or other condition.

[¶ 14] In *Geck v. North Dakota Workers Comp. Bureau*, 1998 ND 158 ¶ 6, 583 N.W.2d 621, and *Pleinis v. North Dakota Workers Comp. Bureau*, 472 N.W.2d 459, 462 (N.D.1991), this Court reviewed workers' compensation decisions under a prior definition of compensable injury, which said a compensable injury did not include:

Injuries attributable to a preexisting injury, disease, or condition which clearly manifested itself prior to the compensable injury. This does not prevent compensation where employment substantially aggravates and acts upon an underlying condition, substantially worsening its severity, or where employment substantially accelerates the progression of an underlying condition. However, it is insufficient to afford compensation under this title solely because the employment acted as a trigger to produce symptoms in a latent and underlying condition if the underlying condition would likely have progressed similarly in the absence of such employment trigger, unless the employment trigger is also deemed a substantial aggravating or accelerating factor. An underlying condition is a preexisting injury, disease, or infirmity.

[¶ 15] In *Pleinis*, 472 N.W.2d at 463 (footnote omitted), this Court construed the prior definition and rejected a claimant's argument that a predicate requirement for rejecting a claim was that a

preexisting condition must clearly manifest itself before a work incident:

> The third sentence describes the consequences when employment acts as a trigger to produce symptoms in a "latent and underlying condition." In that situation compensation is not allowed if the underlying condition would likely have progressed similarly in the absence of an employment trigger, unless the employment trigger is a substantial aggravating or accelerating factor.
>
> The statutory language unambiguously describes when compensation is allowed for injuries attributable to both a latent underlying condition and an underlying condition which clearly manifested itself prior to the compensable injury. In both situations injuries attributable to the preexisting condition are compensable if employment substantially aggravates or accelerates the condition. . . . [T]he statute focuses on whether the underlying condition would likely have progressed similarly in the absence of employment, or whether the employment substantially aggravated or accelerated the condition.

This Court upheld a decision rejecting a claim for benefits, stating the agency's findings were sufficient to understand that the claimant's employment was not a substantial or accelerating factor of his underlying arthritis and osteoarthritic change and the underlying condition would likely have progressed similarly in the absence of his employment. *Pleinis*, at 463. Under *Pleinis* and the prior definition of compensable injury, the focus was on whether the underlying latent condition would likely have progressed similarly in the absence of employment, or whether employment substantially aggravated or accelerated the condition.

[¶ 16] In *Geck*, 1998 ND 158, ¶ 10, 583 N.W.2d 621, in the context of a latent underlying arthritic condition that was asymptomatic until a sharp knee pain was triggered while kneeling at work, a majority of this Court said there was no evidence contradicting that the claimant's pain in her left knee was caused by her work activity and that kneeling at work resulted in her latent underlying arthritic condition becoming symptomatic and painful. The majority concluded pain could be an aggravation of an underlying condition of arthritis and remanded for appropriate findings on whether the claimant's employment substantially aggravated arthritis in her left knee. *Id.* at ¶¶ 10–15.

[¶ 17] The definition of compensable injury at issue in *Pleinis* and *Geck* was amended to its current form by 1997 N.D. Sess. Laws ch. 527, § 1. *See Geck*, 1998 ND 158, ¶ 6 n. 1, 583 N.W.2d 621. The current provisions of N.D.C.C. § 65–01–02(10)(b)(7) do not include language referring to both a latent underlying condition and an injury, disease, or condition which clearly manifested itself before a compensable injury. *See Geck*, at ¶ 6; *Pleinis*, 472 N.W.2d at 462. According to a WSI representative, however, the 1997 amendment did "not significantly change the substance" of the definition of compensable injury; rather, the amendment

> removes unnecessary and confusing language. It also adopts language that better matches the language of the "aggravation statute" at 65–05–15. This will create a more workable progression of compensation with no gaps between the various statutes. If the workplace incident is a "mere trigger" of a preexisting condition then there is no coverage. If the work injury significantly aggravates a known preexisting condition then there is a partial coverage. If the work injury is not really affected by the presence of the preexisting condition then it is a

"new and separate" injury and is covered at 100% of benefits.

*Hearing on H.B. 1269 Before House Industry, Business and Labor*, 55 N.D. Legis. Sess. (Feb. 5, 1997) (written testimony of Reagan R. Pufall, WSI Attorney).

[¶ 18] The issue in this case involves the meaning of the current language of N.D.C.C. § 65–01–02(10)(b)(7). Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions. N.D.C.C. § 1–02–07. If the language of a statute is clear and unambiguous, the letter of the statute may not be disregarded under the pretext of pursing its spirit. N.D.C.C. § 1–02–05. If the language of a statute is ambiguous, however, a court may resort to extrinsic aids to resolve the ambiguity. N.D.C.C. § 1–02–39.

[¶ 19] Under N.D.C.C. § 65–01–02(10)(b)(7), the Legislature has used the disjunctive word "or" in the phrase about whether employment substantially accelerates the progression or substantially worsens the severity of a preexisting injury, disease, or other condition. The word "or" is disjunctive and ordinarily means an alternative between different things or actions with separate and independent significance. *State ex rel. Stenehjem v. FreeEats.com, Inc.*, 2006 ND 84, ¶ 14, 712 N.W.2d 828. The Legislature's use of two different phrases with the disjunctive "or" contemplates separate and independent significance for ascertaining whether an injury attributable to a preexisting injury, disease, or other condition is compensable because employment substantially accelerates the progression or substantially worsens the severity of the injury, disease, or other condition. *See id.* A commonly un-

derstood meaning of "substantial" is "consisting of or relating to substance, ... not imaginary or illusory, ... real, true, ... important, essential." *Merriam–Webster's Collegiate Dictionary* 1245 (11th ed.2005). That source also defines "accelerate" to mean "to bring about at an earlier time, ... to cause to move faster, ... to hasten the progress or development of." *Id.* at 6. That source also defines "worsen" as to make "worse," which in turn means "more unfavorable, difficult, unpleasant, or painful." *Id.* at 1445. Moreover, under the statutory definition of compensable injury, an injury attributable to a preexisting injury, disease, or other condition is not compensable when employment acts as a "trigger" to produce "symptoms" in the preexisting injury, disease, or other condition. A commonly understood meaning of "symptom" is "subjective evidence of disease or physical disturbance, ... something that indicates the presence of bodily disorder." *Id.* at 1267. That source defines "trigger" as "something that acts like a mechanical trigger in initiating a process or reaction." *Id.* at 1337.

[¶ 20] When those terms are considered together to give meaning to each term, they mean injuries attributable to a preexisting injury, disease, or other condition are compensable if the employment in some real, true, important, or essential way makes the preexisting injury, disease or other condition more unfavorable, difficult, unpleasant, or painful, or in some real, true, important, or essential way hastens the progress or development of the preexisting injury, disease, or other condition. In contrast, injuries attributable to a preexisting injury, disease, or other condition are not compensable if employment acts like a mechanical trigger in initiating a process or reaction to produce subjective evidence of a disease or physical disturbance or something that indicates

the presence of a bodily disorder. We recognize, as did the ALJ and Dr. Peterson, that pain can be a symptom, or subjective evidence, of an injury, disease or other condition. Under the ordinary meaning of those terms, however, employment can also substantially worsen the severity, or substantially accelerate the progression of a preexisting injury, disease, or other condition when employment acts as a substantial contributing factor to substantially increase a claimant's pain. That conclusion is consistent with our decision in *Geck*, that pain can be a substantial aggravation of an underlying latent condition. 1998 ND 158, ¶ 10, 583 N.W.2d 621.

■ [¶ 21] Nevertheless, under the ordinary meaning of the language in N.D.C.C. § 65–01–02(10)(b)(7), the distinction between compensability and noncompensability for injuries attributable to a preexisting injury, disease, or other condition is not clear, and we may consider extrinsic aids, including legislative history and former statutory provisions, to construe the current language. N.D.C.C. § 1–02–39(3) and (4). When the language in N.D.C.C. § 65–01–02(10)(b)(7) is considered together and in conjunction with the statement in the 1997 legislative history that those amendments did not change the substance of the definition of compensable injury, we conclude part of the analysis for assessing compensability of injuries attributable to a latent preexisting injury, disease, or other condition is whether or not the underlying preexisting injury, disease, or other condition would likely have progressed similarly in the absence of employment. *See Pleinis*, 472 N.W.2d at 462–63. We decline to construe those terms so narrowly as to require only evidence of a substantial worsening of the disease itself to authorize an award of benefits. Rather, the statute also authorizes compensability if employment substantially accelerates the

progression or substantially worsens the severity of the injury, disease, or other condition, which we conclude requires consideration of whether the preexisting injury, disease or other condition would have progressed similarly in the absence of employment. Under that language, employment substantially accelerates the progression or substantially worsens the severity of a preexisting injury, disease, or other condition when the underlying condition likely would not have progressed similarly in the absence of employment. That interpretation provides additional clarification and explanation for delineating between noncompensability when employment triggers symptoms in a preexisting latent injury, disease, or other condition and compensability when employment substantially accelerates the progression or substantially worsens the severity of the preexisting injury, disease, or other condition. That interpretation is also consistent with the purpose of workers compensation law to provide "sure and certain relief" for workers, *see* N.D.C.C. § 65–01–01, and with the principle that employment must be a substantial contributing factor for a compensable injury and need not be the sole cause of the injury. *Bruder*, 2009 ND 23, ¶ 8, 761 N.W.2d 588.

[¶ 22] Here, the ALJ relied heavily on Dr. Peterson's opinion and decided Mickelson's employment triggered his symptoms of degenerative disc disease, but did not substantially accelerate the progression or worsen the severity of the degenerative disc disease itself, stating:

> The greater weight of the evidence shows that Mr. Mickelson's low back pain and right leg radiculopathy are symptoms of his degenerative disc disease. There is no evidence that Mr. Mickelson had these symptoms before he operated a loader for Gratech Company Ltd.

At the hearing, Dr. Peterson discussed the significance of Mr. Mickelson's degenerative disc disease symptoms and their relation to his alleged work injury. Dr. Peterson testified that Mr. Mickelson's degenerative disc disease was not caused by his reported work injury. Dr. Peterson explained that Mr. Mickelson's symptoms are consistent with the MRI findings and typical of degenerative disc disease, including radiation of pain into the right leg. And his symptoms upon standing, which are relieved by sitting, are also typical of degenerative disc disease. Dr. Peterson agreed with Dr. Goehner that degenerative disc disease develops over time and is an aging process. It is not the result of a repetitive injury (Dr. Goehner also characterized Mr. Mickelson's condition as "chronic" as opposed to an acute injury). According to Dr. Peterson, work activities have no significant effect on the development of degenerative disc disease and there is no evidence that repetitive stress accelerates or worsens degenerative disc disease. But, if you subject degenerative discs to the type of work Mr. Mickelson was doing, you may trigger symptoms of degenerative disc disease, but the degenerative disc disease itself is not substantially aggravated or worsened. In sum, Dr. Peterson opined that Mr. Mickelson's low back and right leg pain are symptoms of his degenerative disc disease. His work activities may have elicited these symptoms, but the work didn't substantially aggravate or worsen the degenerative disc disease.

Drs. Peterson and Goehner agree that Mr. Mickelson has degenerative disc disease unrelated to his work duties and that his low back and right leg symptoms are related to the degenerative disc disease. They part company however, in that Dr. Goehner says that the degenerative disc disease is worse because Mr. Mickelson's work caused him to have symptoms, and he didn't have symptoms before. Dr. Peterson says that Mr. Mickelson's work may have triggered symptoms of the degenerative disc disease, but work didn't make the degenerative disc disease worse; it made it symptomatic.

... Mr. Mickelson has preexisting degenerative disc disease and his low back pain and right leg pain and numbness are symptoms of his degenerative disc disease. Mr. Mickelson's employment triggered his symptoms of degenerative disc disease but there is no evidence that Mr. Mickelson's employment substantially accelerated the progression or substantially worsened the severity of the degenerative disc disease. Mr. Mickelson suggests that the triggering of symptoms constitutes a substantial worsening of his degenerative disc disease. If that were the case, the "trigger" language in 65–01–02[ (10) ](b)(7) would be meaningless. The language of section 65–01–02[ (10) ](b)(7) makes clear that a mere triggering of symptoms in a preexisting disease will not suffice as a compensable injury, in the absence of evidence that the disease itself is substantially worse. Here, the evidence shows that Mr. Mickelson's work acted as a trigger to make the underlying degenerative disc disease symptomatic, but there is no evidence that the underlying disease was made worse. Mr. Mickelson may think it unfair, but the legislature [has] made clear that a mere trigger of symptoms is not enough to establish compensability.

[¶ 23] We conclude Dr. Peterson's opinion and the ALJ's acceptance of that opinion misapplied the definition of compensable injury. The ALJ said Mickelson's condition itself, degenerative disc dis-

344

ease, must have substantially worsened. Although the ALJ made a conclusory statement there was no evidence Mickelson's employment substantially accelerated the progression of his degenerative disc disease, the ALJ's decision focused on whether the disease itself worsened without considering whether the underlying injury, disease, or other condition would likely have progressed similarly in the absence of his employment. We conclude the ALJ misapplied the law by looking too narrowly at Mickelson's degenerative disc disease itself without considering whether his injury, disease, or other condition would likely not have progressed similarly in the absence of his employment so as to substantially accelerate the progression or substantially worsen the severity of his injury, disease, or other condition. We therefore reverse the judgment and remand for proper application of N.D.C.C. § 65–01–02(10)(b)(7).

## IV

■ [¶ 24] Mickelson argues the ALJ failed to address the August 30, 2009, opinion by Mickelson's treating physician, Dr. Goehner, stating Mickelson sustained a compensable soft tissue injury. WSI responds the ALJ adequately addressed that issue and could reasonably conclude Mickelson failed to establish a compensable injury to his lumbar spine in the context of resolving the issue about his degenerative disc disease.

[¶ 25] The ALJ's decision describes some inconsistency about the nature of Mickelson's injury, disease, or other condition in Dr. Goehner's August 30, 2009, office note and in his April 2010 letter "to whom it may concern." The ALJ found the "greater weight of the evidence shows that Mr. Mickelson's low back pain and right leg radiculopathy are symptoms of his degenerative disc disease." Contrary to the ALJ's conclusion, however, Dr. Goehner's April letter referenced stress to the muscles, and he did not specifically eliminate a muscle strain as an injury, disease, or other condition. Moreover, this issue is intertwined with the correct application of the definition of compensable injury, and on remand, WSI must adequately explain Dr. Goehner's soft-tissue or muscle strain diagnosis in the context of the correct application of N.D.C.C. § 65–01–02(10)(b)(7).

## V

[¶ 26] Mickelson argues he adequately explained his failure to provide notice of his injury to his employer within seven days of the injury and that failure is not an independent ground to deny his claim. WSI responds the ALJ could reasonably decide WSI could consider Mickelson's failure to provide his employer with notice of injury within seven days of the injury.

■ [¶ 27] Section 65–05–01.2, N.D.C.C., provides an "employee shall take steps immediately to notify the employer that the accident occurred and . . . the general nature of the injury to the employee, if apparent," and "[a]bsent good cause, notice may not be given later than seven days after the accident occurred or the general nature of the employee's injury became apparent." Under N.D.C.C. § 65–05–01.3, WSI "may consider" an employee's failure to notify an employer of an accident and the general nature of the employee's injury in determining whether the employee's injury is compensable. An obvious purpose of those statutes is to provide notice to an employer to allow the employer to alleviate dangerous conditions to prevent injuries. The plain language of those statutes allows WSI to "consider" a claimant's failure to notify an employer of an accident and the nature of the employee's injuries. Here, however, the ALJ did

not decide Mickelson's claim on this issue, and we will not further address it.

## VI

[¶ 28] We reverse the judgment and remand for proceedings consistent with this opinion.

[¶ 29] MARY MUEHLEN MARING, J., concur.

VANDE WALLE, Chief Justice, concurring specially.

[¶ 30] I was part of the majority in *Geck v. North Dakota Workers Comp. Bureau*, 1998 ND 158, 583 N.W.2d 621, concluding that pain could be an aggravation of an underlying arthritic condition. While I agree with that conclusion, I am disturbed by the failure of the statutes and our opinions construing those statutes to distinguish those instances in which pain aggravates an underlying condition, i.e., substantially worsens the severity of the condition, from those instances in which, as the majority opinion here recognizes, pain is only a symptom of the condition triggered by employment. To the extent that is a factual, rather than a legal question, I am willing to remand the matter to WSI for further consideration under the facts of this case.

[¶ 31] GERALD W. VANDE WALLE, C.J.

CROTHERS, Justice, concurring in part and dissenting in part.

[¶ 32] I concur in Parts IV and V. I respectfully dissent from Part III in which the majority reverses the ALJ's decision based on what it concludes is an improper application of N.D.C.C. § 65–01–02(10)(b)(7). Majority opinion at ¶ 23. I would affirm because the ALJ correctly applied current law and because the ALJ reasonably could have found based on the evidence that Mickelson failed to prove a compensable injury.

[¶ 33] A "compensable injury" under workers' compensation law is defined as follows:

"10. 'Compensable injury' means an injury by accident arising out of and in the course of hazardous employment which must be established by medical evidence supported by objective medical findings.

 . . . .

"b. The term does not include:

 . . . .

"(7) Injuries attributable to a preexisting injury, disease, or other condition, including when the employment acts as a trigger to produce symptoms in the preexisting injury, disease, or other condition unless the employment substantially accelerates its progression or substantially worsens its severity."

N.D.C.C. § 65–01–02(10). This case focuses on exclusionary language in the statute to determine whether Mickelson's low back pain is compensable as a substantial acceleration or a substantial worsening of an existing injury.

[¶ 34] Mickelson's argument is substantially based on a law review article written by his lawyer and on a general Workers' Compensation treatise. The majority does not follow Mickelson down that path but spends considerable effort parsing the meaning of "symptom," "substantially" and "trigger" and applying two of this Court's decisions issued before N.D.C.C. § 65–01–02(10) was changed in 1997. Majority opinion at ¶¶ 14–21. I respectfully submit both Mickelson and the majority fail to focus on the plain words given by the legislature, which of course should direct our result. *See* N.D.C.C.

§ 1–02–02 ("Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears, but any words explained in this code are to be understood as thus explained.").

[¶ 35] The statute applicable to Mickelson's claim says injuries attributable to a preexisting disease do not constitute a compensable injury. N.D.C.C. § 65–01–02(10)(b)(7). An exception to the limitation is if the injury attributable to a preexisting disease is proven to substantially accelerate or substantially worsen severity of the disease. *Id.* The ALJ's conclusion 2 succinctly, and I believe correctly, explains both a proper reading of the statute and why Mickelson's claim fails:

> "Mr. Mickelson has preexisting degenerative disc disease and his low back pain and right leg pain and numbness are symptoms of his degenerative disc disease. Mr. Mickelson's employment triggered his symptoms of degenerative disc disease but there is no evidence that Mr. Mickelson's employment substantially accelerated the progression or substantially worsened the severity of the degenerative disc disease. Mr. Mickelson suggests that the triggering of symptoms constitutes a substantial worsening of his degenerative disc disease. If that were the case, the 'trigger' language in 65–01–02(b)(7) would be meaningless. The language of section 65–01–02(b)(7) makes clear that a mere triggering of symptoms in a preexisting disease will not suffice as a compensable injury, in the absence of evidence that the disease itself is substantially worse. Here, the evidence shows that Mr. Mickelson's work acted as a trigger to make the underlying degenerative disc disease symptomatic, but there is no evidence that the underlying disease was made worse. Mr. Mickelson may think it unfair, but the legislature [h]as made clear

that a mere trigger of symptoms is not enough to establish compensability."

[¶ 36] Rather than affirming the ALJ's straightforward application of the statute, the majority opinion seemingly grinds the meaning of ordinary words to powder and reshapes them to say "a preexisting injury, disease, or other condition are compensable if the employment in some real, true, important, or essential way makes the preexisting injury, disease or other condition more unfavorable, difficult, unpleasant, or painful, or in some real, true, important, or essential way hastens the progress or development of the preexisting injury, disease, or other condition." Majority opinion at ¶ 20. After reshaping, the statute is read by the majority to say "pain can be a substantial aggravation of an underlying latent condition," Majority opinion at ¶ 20 (citing *Geck v. North Dakota Workers Comp. Bureau*, 1998 ND 158, ¶ 10, 583 N.W.2d 621), and "employment substantially accelerates the progression or substantially worsens the severity of a preexisting injury, disease, or other condition when the underlying condition likely would not have progressed similarly in the absence of employment." Majority opinion at ¶ 21. In simple terms, the majority holding appears to be that pain caused by current employment can be a compensable injury because it made an existing condition more "unfavorable," "difficult" or "unpleasant." But clearly, that is not what the legislature said or meant in N.D.C.C. § 65–01–02(10)(b)(7).

[¶ 37] A key part of the majority's result is based on this Court's outdated holding in *Geck*. The definition of compensable injury applicable to Geck's claim in July of 1996 was far different from the definition applicable to Mickelson's claim. In *Geck*, the definition of compensable injury applicable to the case was:

"b. The term ['compensable injury'] does not include:

. . . .

"(6) Injuries attributable to a preexisting injury, disease, or condition which clearly manifested itself prior to the compensable injury. This does not prevent compensation where employment substantially aggravates and acts upon an underlying condition, substantially worsening its severity, or where employment substantially accelerates the progression of an underlying condition. It is insufficient, however, to afford compensation under this title solely because the employment acted as a trigger *to produce symptoms in a latent and underlying condition* if the underlying condition would likely have progressed similarly in the absence of the employment trigger, *unless the employment trigger is determined to be a substantial aggravating or accelerating factor.* An underlying condition is a preexisting injury, disease, or infirmity."

*Geck*, 1998 ND 158, ¶ 6, 583 N.W.2d 621.

[¶ 38] The version of N.D.C.C. § 65–01–02(10) applicable to Mickelson's claim requires a "substantial acceleration" or "substantial worsening" of the severity of the preexisting injury, disease or other condition. The current statute no longer allows recovery for "aggravation" of a condition like that considered in *Geck*. Therefore, even following the *Geck* majority's view that pain could have been an aggravation of Geck's existing condition, the current statute eliminates the possibility for compensation when pain is no more than aggravation of an underlying disease.

[¶ 39] Rather than requiring us to dissect the statute, I believe this case is more like *Bergum v. N.D. Workforce Safety & Ins.*, 2009 ND 52, 764 N.W.2d 178. There, the claimant alleged a recent work incident substantially worsened or substantially accelerated his chronic low back condition. *Id.* at ¶ 10. This Court applied the version of the statute applicable to Mickelson's claim and held:

"A claimant seeking workforce safety and insurance benefits has the burden of proving by a preponderance of the evidence that the claimant has suffered a compensable injury and is entitled to benefits. N.D.C.C. § 65–01–11; *Manske v. Workforce Safety & Ins.*, 2008 ND 79, ¶ 9, 748 N.W.2d 394. To carry this burden, a claimant must prove by a preponderance of the evidence that the medical condition for which benefits are sought is causally related to a work injury. *Manske*, ¶ 9; *Swenson* [*v. Workforce Safety & Ins. Fund* ], 2007 ND 149, ¶ 24, 738 N.W.2d 892.

"Under N.D.C.C. § 65–01–02(10), a compensable injury 'must be established by medical evidence supported by objective medical findings.' Section 65–01–02(10)(b), N.D.C.C., excludes preexisting injuries from what is defined as a 'compensable injury,' stating in part:

"10. 'Compensable injury' means an injury by accident arising out of and in the course of hazardous employment which must be established by medical evidence supported by objective medical findings.

. . . .

"(b) The term does not include:

. . . .

"(7) Injuries attributable to a preexisting injury, disease, or other condition, including when the employment acts as a trigger to produce symptoms in the preexisting injury, disease, or other condition *unless the employment substantially accelerates its progression or substantially worsens its severity.*

"(Emphasis added.) Thus, under N.D.C.C. § 65–01–02(10)(b)(7), unless a

claimant's employment 'substantially accelerates' the progression of, or 'substantially worsens' the severity of, a preexisting injury, disease, or other condition, it is not a 'compensable injury' when the claimant's employment merely acts to trigger symptoms in the preexisting injury, disease, or other condition.

### A

"Bergum argues that although a worsening of his preexisting condition is not apparent on x-ray or other radiological testing, Bergum's symptoms have worsened since the January 2006 incident and have more significantly impacted him. Bergum further argues his injury is compensable based upon this Court's decision in *Geck v. North Dakota Workers Comp. Bur.*, 1998 ND 158, 583 N.W.2d 621. We disagree.

"In *Geck*, 1998 ND 158, ¶ 10, 583 N.W.2d 621, the claimant for workers compensation benefits suffered pain in her knee caused by kneeling at work, resulting in her underlying condition of arthritis becoming symptomatic and painful. Under the version of N.D.C.C. § 65–01–02 then in effect, this Court stated that when employment 'triggers symptoms in a latent and underlying condition, compensation is generally not allowed if the underlying condition would likely have progressed similarly in the absence of the employment trigger, unless the employment trigger is a substantial aggravating or accelerating factor.' *Geck*, ¶ 7 (emphasis omitted); *see also Hein v. North Dakota Workers Comp. Bur.*, 1999 ND 200, ¶ 17, 601 N.W.2d 576 (quoting *Geck*). In *Geck*, at ¶ 13, this Court held that the ALJ had failed to reconcile favorable medical evidence and failed to set forth expressly the reasons for disregarding the favorable medical evidence. In light of the medical evidence, this Court remanded the *Geck* case to the Bureau to make

findings whether the employment trigger 'substantially aggravated' the arthritis in the claimant's knee. *Geck*, at ¶ 14.

"In this case, the issue is whether Bergum's work-related incident 'substantially accelerated' the progression of, or 'substantially worsened' the severity of, a preexisting injury, disease, or other condition. Unlike *Geck*, the ALJ's opinion here, adopted by WSI as its final order, made a number of specific factual findings addressing the competing expert physician opinions and ultimately accepted the opinion of WSI's examining physician, Dr. Joel Gedan, a board certified neurologist, over the opinion of Bergum's treating physician, Dr. Gomez. As will be discussed further, WSI's final order contains findings of fact and conclusions of law that explicitly explain why Dr. Gedan's expert opinion was accepted over Dr. Gomez's opinion. We conclude that our decision in the *Geck* case does not mandate a finding that Bergum has a compensable injury in this case."

*Bergum*, at ¶¶ 11–15.

[¶ 40] Like in *Bergum*, Mickelson's case is controlled by the current statute requiring proof of a compensable injury stemming from employment that substantially accelerates the progression of an existing disease or substantially worsens its severity. Like in *Bergum*, Mickelson's case had conflicting evidence which was considered and explained by the ALJ. Like in *Bergum*, Mickelson's case does not turn on the holding in *Geck* but instead requires affirmance under a plain reading of the law, the evidence in this case and our standard of review.

[¶ 41] DALE V. SANDSTROM, J., concurs.